IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BASCOM GLOBAL INTERNET SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AT&T CORP., <br><br> Defendant. | Civil Action No. 3:14-cv-03942-M <br><br> **JURY TRIAL DEMANDED** |

**BASCOM'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO COMPEL**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ iii

I.  INTRODUCTION ...............................................................................................................1

II. ARGUMENT.......................................................................................................................1

    A.  The Court Should Compel AT&T to Produce Comparable Licenses......................2

    B.  The Court Should Compel AT&T to Produce E-Mail Discovery Pursuant to the Court's ESI Order ...........................................................................5

    C.  The Court Should Compel AT&T to Produce Information Depicting the Number of Seat Licenses Sold and Volume of Requests for the Accused Products.....................................................................................................8

    D.  The Court Should Compel AT&T to Provide Access to the Accused Offerings ................................................................................................................11

III. CONCLUSION..................................................................................................................12

# **TABLE OF AUTHORITIES**

Cases

*Cuno Inc. v. Pall Corp.*,
    116 F.R.D. 279 (E.D.N.Y. 1987) .................................................................................... 11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    2016 WL 3880774 (N.D. Cal. July 18, 2016) .............................................................. 9, 10

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*,
    224 F.R.D. 644 (N.D. Cal. 2004) .................................................................................. 3, 4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................................. 2

*Lucent Tech., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ......................................................................................... 2

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
    894 F.2d 1482 (5th Cir. 1990) .......................................................................................... 2

*Merrill v. Waffle House, Inc.*,
    227 F.R.D. 467 (N.D. Tex. 2005) ..................................................................................... 1

*Pavillion Bank v. OneBeacon Am. Ins. Co.*,
    No. 3:12-CV-05211-G-BK, 2013 WL 12126258 (N.D. Tex. Nov. 13, 2013) ................... 7

*S.E.C. v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) ..................................................................................... 5

*Slide Fire Sols., LP v. Bump Fire Sys., LLC*,
    No. 3:14-CV-3358-M, 2016 WL 3352006 (N.D. Tex. Feb. 4, 2016) ................................ 5

*Stamps.com, Inc. v. Endicia, Inc.*,
    No. CV 06-7499-ODW(CTX), 2008 WL 11339110 (C.D. Cal. June 24, 2008) ............. 11

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
    69 F.3d 512 (Fed. Cir. 1995) ............................................................................................. 2

*United States ex rel. Simms v. Austin Radiological Ass'n*,
    292 F.R.D. 378 (W.D. Tex. 2013) .................................................................................... 7

Rules

Fed. R. Civ. P. 26(b) ................................................................................................................. 5

## I. INTRODUCTION

BASCOM respectfully requests the Court to compel AT&T to respond fully to BASCOM's discovery requests by January 1, 2018, specifically: (1) produce relevant and responsive licenses; (2) produce unredacted versions of documents that AT&T either redacted or withheld completely for confidentiality, without any basis for doing so and despite the fact that the Court has already entered a protective order requiring the production of confidential information; (3) produce e-mail responsive to BASCOM's final e-mail requests; (4) produce information depicting the number of seat licenses and the volume of requests for the accused offerings; and (5) provide access to the accused offerings.

BASCOM is reluctant to burden the Court with this motion, but as described below, has been unable to get AT&T to comply with its discovery obligations without Court intervention. Fact discovery closes in just under two months (*see* Dkt. No. 231), and BASCOM needs time to review AT&T's materials and take related depositions before February 7, 2018.[1] Accordingly, BASCOM respectfully requests the Court to grant BASCOM's motion to compel.

## II. ARGUMENT

Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (internal citations and quotations omitted). The party resisting discovery must show specifically

---

[1] BASCOM's most recent Motion to Compel Documents and Information About the Technical Operation of AT&T's Internet Filtering Products (Dkt. No. 175) has been pending since July 25, 2017.

1

how each discovery request is not relevant or is otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

### A. The Court Should Compel AT&T to Produce Comparable Licenses

A reasonable royalty rate is determined by the amount that the parties would have agreed upon during a hypothetical arms-length negotiation. *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). That calculation is based upon several factors, as set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), including, for example, "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." Licensing evidence "should carry considerable weight in calculating a reasonable royalty rate." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (citing *Georgia Pacific*). As such, BASCOM sought discovery of such licensing evidence from AT&T:

> **REQUEST FOR PRODUCTION NO. 18:** All patent licenses and/or royalty agreements entered into by You as a licensee or licensor, including the date and terms of each, relating to any aspect, feature or functionality of the Accused Offerings or any Relevant Offerings.
>
> **REQUEST FOR PRODUCTION NO. 74:** All patent licenses and/or royalty agreements entered into by You as a licensee, including the date and terms of each, covering network management technology. For purposes of this request, "network management technology" refers to technology relating to the management of computer networks, including but not limited to network administration, network operation, network maintenance, network performance (including but not limited to quality of service/QoS, packet filtering, traffic management, and bandwidth shaping), and network protection and security (including but not limited to firewall, intrusion detection, malware protection, web or content filtering, and spam filtering).

APP_015 (BASCOM's First Set of Requests for Production); APP_028 (BASCOM's Fourth Set of Requests for Production).

AT&T did not produce a single patent license in response.[2] Instead, in meet and confers and in its written responses, AT&T insisted it would limit its responsive production to licenses and royalty agreements "entered into by AT&T as a licensee concerning patents that claim URL filtering." *See* APP_034 (AT&T's Response to BASCOM's Fourth Set of Requests for Production).[3] Apparently, no such patent licenses exist.

BASCOM's requests seek information about comparable patent licenses, which are highly relevant to the *Georgia Pacific* factors. AT&T's unilateral conditions are too limited for at least two reasons. First, BASCOM's requests seek licenses "relating to any aspect, feature or functionality of the Accused Offerings," whereas AT&T has limited its production to a single feature, URL filtering. Second, BASCOM's requests seek licenses relevant to comparable technologies—i.e., network management technology—which AT&T has declined to provide. Such licenses are highly relevant to a hypothetical negotiation between AT&T and BASCOM, particularly where AT&T hasn't produced a single patent license for analysis under the *Georgia Pacific* factors. AT&T's view of "comparable" patents is so narrow that it is seemingly limited to only BASCOM's patent.

Courts routinely require the production of such licenses. In *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc*., 224 F.R.D. 644 (N.D. Cal. 2004), a patent case related to hemiodialysis machines (a type of kidney dialysis machine), plaintiff sought information about "all licenses to export, import, make, use, or, or sell any kidney dialysis machine." *Id.* at 652. Defendant argued the request was overbroad because "many dialysis machines do not embody the inventions

---

[2] AT&T did produce a couple of product licenses, and a patent sale agreement pursuant to which it sold its own patent to a third party. After reading BASCOM's draft Motion to Compel, AT&T also stated it "will produce" a single "patent sale agreement involving patents related to firewall technology." APP_403.

[3] AT&T orally confirmed the same limitation with respect to documents responsive to BASCOM's Request for Production No. 18.

3

claimed in the patents-in-suit" and attempted to limit its response on that basis. *Id.* at 652-53. The Court rejected that "unilateral limitation," finding that defendant had not met its burden to show that the requested licenses were not discoverable: "Baxter claims that only licenses under the patents-in-suit are relevant to the calculation of a reasonable royalty. . . [but] Fresenius' request for licenses of comparable products is reasonably calculated to lead to admissible evidence." *Id.* AT&T's analogous attempt to unilaterally limit its production should likewise be rejected.

BASCOM seeks licenses covering "network management technology," as defined, because it is a category of technology that is reasonably related or similar to the claimed technology from the perspective of AT&T's business operations. AT&T sells a wide range of network management technology offerings. Such offerings tend to involve similar infrastructural requirements and economics. For example, many are "hosted" or "cloud-based" offerings that are provided through centralized AT&T servers and are offered as a service delivered via the Internet. Such offerings also tend to be sold to a similar market of large business and enterprise clients, through similar sales channels, to similar decision-makers, and using similar pricing structures. In short, any AT&T-agreed royalty relating to network management technologies is more likely to be probative of what AT&T would have agreed to in the hypothetical negotiation with BASCOM than licenses to unrelated technologies. As a result, "network management technology" is a reasonably targeted category in light of the needs of the case.

By contrast, AT&T's artificial limitation of its search to licenses to "URL filtering" is unjustifiably narrow. First off, AT&T's limitation is in defiance of this Court's claim construction order, which rejected AT&T's argument that the patent-in-suit was addressed solely to filtering of websites (which is what a URL address specifies). This Court held that the term

4

"site," as used in the claims, referred to any "Internet computer network addressable location that contains a collection of content," not just websites. (Dkt. 219, at 47.) In other words, AT&T is not even agreeing to provide licenses covering the full scope of the claimed technology. On the parties' telephonic meet and confer, the only justification that AT&T provided was that BASCOM's licensing requests are not "proportional" to the needs of the case. "But a party seeking to resist discovery on [proportionality] grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b)." *Slide Fire Sols., LP v. Bump Fire Sys*., LLC, No. 3:14-CV-3358-M, 2016 WL 3352006, at *3 (N.D. Tex. Feb. 4, 2016). AT&T asserted reviewing potentially responsive licenses would be "burdensome," but refused to provide any further details, including, for example, an approximate number of licenses counsel would need to review, the manner in which such licenses are kept, or <u>any</u> concrete reason that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

The Court should compel AT&T to produce responsive licenses.

**B. The Court Should Compel AT&T to Produce E-Mail Discovery Pursuant to the Court's ESI Order**

Pursuant to the Court's February 22, 2017 Electronic Discovery Order (Dkt. No. 107 ("ESI Order")), BASCOM is entitled to the production of e-mail from eight AT&T custodians, using up to eight search terms per custodian. (*Id.* ¶¶ 10-11; *see also* Dkt. No. 79 at 2 (AT&T's request for a maximum of five custodians and five search terms).) The ESI order does not provide either party a unilateral right to refuse to produce e-mail discovery, for any reason, and

5

advises the parties to "meaningful[ly] compl[y] with this Order and . . . promote efficiency and reduce costs." (*Id.* ¶ 3.) But despite its clear contours, AT&T has made every effort to avoid complying with the Court's order by dragging out e-mail discovery for months and repeatedly refusing to provide BASCOM with any e-mail discovery.

BASCOM served its first requests for e-mail from four AT&T custodians on June 21, 2017. (*See* APP_038-39.) Since that time, AT&T has offered every excuse under the sun to avoid its e-mail discovery obligations, including stating, without any supporting authority, that BASCOM's requests are "presumptively unreasonable" because of the volume of responsive hits (APP_041-44); arguing without apparent analysis that BASCOM's requests were "likely to generate a large proportion of irrelevant results" because they combine "product names" with "common words" (including such "common words" as "filter!" and "blacklist! OR whitelist!"—words that go to the heart of the accused functionality) (APP_041); and suggesting that BASCOM's terms "exceed the allotted limit" because they use disjunctions, even though such disjunctions did not operate to increase the number of terms or hits because they were used in <u>conjunctive</u> phrases (e.g. Filter! <u>AND</u> (web or URL or malware OR IP). (*See* APP_048-49.[4]) Instead of negotiating with BASCOM in good faith, AT&T repeatedly and unilaterally refused to produce responsive e-mail *(see* APP_041-42 ("[W]e do not plan on producing e-mail or continuing to run searches if you cannot provide a set of e-mail search terms that complies with the Court's Order.")), letting weeks lapse between its responses. Indeed, despite BASCOM first requesting e-mail from AT&T in June 2017, AT&T did not agree to produce any e-mail until

---

[4] AT&T later withdrew this untenable position, arguing instead it did not have to produce responsive documents because of the volume of hits, before reprising it again for BASCOM's next set of search terms. *See infra* p. 8.

more than three months later, on September 29, 2017 (*see* APP_053), and did not begin producing e-mail until November 17, 2017.[5]

There are two significant remaining issues with AT&T's email production, and BASCOM does not have another six months to wait. BASCOM regrets burdening the Court with these issues, but is running out of time before the end of fact discovery.

*First*, AT&T recently informed BASCOM that it made the unilateral decision to "redact[] the customer names from the e-mails [responsive to the requests described above]. In addition, we are not producing 2,217 e-mail attachments that include customer names and other customer-specific information." (APP_057.) There is no basis for AT&T's actions. The Court's Protective Order (Dkt. No. 88) provides more than adequate safeguards for any sensitive information, and there is no legal justification to unilaterally redact or withhold otherwise responsive, relevant, and unprivileged information, especially when the redactions eliminate context necessary for a complete understanding of the documents. *See Pavillion Bank v. OneBeacon Am. Ins. Co.*, No. 3:12-CV-05211-G-BK, 2013 WL 12126258, at *3 (N.D. Tex. Nov. 13, 2013) ("Plaintiff was not entitled to unilaterally redact information it believed to be irrelevant or non-responsive. Further, any concerns regarding proprietary information and confidentiality are sufficiently addressed by the agreed protective order entered in this suit.") (citing cases).

AT&T argues incorrectly that such redactions are sanctioned by Magistrate Judge Stickney's decision on BASCOM's Motion to Compel a Complete Answer to Interrogatory No. 6 (Dkt. No. 184). BASCOM's sixth interrogatory requested revenue information by customer on a monthly basis, and AT&T objected to identifying customer names in its response as "outside the scope of Interrogatory No. 6." (*See id.* at 5.) Magistrate Judge Stickney sustained AT&T's objection with respect to that discrete dispute. That does not give AT&T carte blanche to redact

---

[5] BASCOM completed its e-mail production on September 13, 2017.

7

and withhold otherwise relevant and responsive emails and documents. *See Pavillion* Bank, 2013 WL 12126258, at *3 ("'Redaction is, after all, an alteration of potential evidence,' and 'a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.'") (quoting *United States ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 386 (W.D. Tex. 2013)).

*Second*, AT&T has refused to produce <u>any</u> e-mail that is responsive to BASCOM's remaining request. Despite the Court's instruction to begin e-mail discovery by identifying "the eight most significant listed e-mail custodians of each side," AT&T had identified only five custodians by October 12, 2017, when it identified a single additional custodian, Sarah Kisner. (*See* APP_062; *see also* APP_067.) BASCOM served requests for Ms. Kisner (*see* APP_069), which AT&T once again unilaterally rejected. (*See* APP_057 ("[W]e will not be producing email for Sarah Kisner on the basis of the search terms transmitted on November 10. Bascom's proposed search terms for Ms. Kisner do not comply with the Court's ESI order.").) AT&T reprises its incorrect argument that BASCOM's request "exceeds the limit of eight search phrases" by using disjunctions. But such disjunctions are part of limiting conjunctive phrases, and do not operate to increase the number of terms. (*See* APP_069, APP_403.)

BASCOM respectfully requests the Court to order AT&T to produce unredacted e-mail and attachments responsive to BASCOM's e-mail requests.

### C. The Court Should Compel AT&T to Produce Information Depicting the Number of Seat Licenses Sold and Volume of Requests for the Accused Products

One important component of BASCOM's damages analysis in this case is the number of end-users who use the accused offerings. AT&T provides the accused offerings to business customers bundled with hosted online services and other security offerings. ▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

8

██████████████████████████████████████

██████████████████████████████████████

In order to analyze the value to AT&T from its use of BASCOM's patent in the accused offerings, BASCOM needs to know AT&T's *extent* of use—the number of end-users who have licenses to and who ultimately use the accused offerings.

Of course, this measure of extent of use is relevant and discoverable information in a patent case. Many damages models that have been found reliable in patent cases are based on a royalty rate multiplied by the number of end-users. *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2016 WL 3880774, at *6 (N.D. Cal. July 18, 2016) (affirming jury award of damages against Blue Coat Systems based on $8 per user royalty model). Indeed, the jury verdict awarding damages for patent infringement in BASCOM's prior lawsuit against AOL for infringing the '606 patent was based on the number of end-users of AOL's accused offerings. (*See* APP_105-07; APP_398-401.)

BASCOM requested AT&T to provide a monthly breakdown of seat licenses and volume of requests for the accused offerings with Interrogatory No. 11:

> **INTERROGATORY NO. 11:** For each of the Filtering-Available Offerings where Filtering Functionality is provided by any of the Accused Filtering Platforms, in tabular form on a monthly basis during the Applicable Time Period, state the number of seats and the volume of requests for which AT&T provided the Filtering Functionality.

(*See* APP_115.) The interrogatory covers a broader set of products than just the accused offerings, and BASCOM's motion to compel information related to this broader set of products is under submission, following a hearing on October 18, 2017.

██████████████████████████████████████

██████████████████████████████████████

9

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

AT&T's counsel has represented at multiple meet and confers over the course of months that AT&T simply did not track any seat license or request volume data beyond what they provided in the two revenue spreadsheets. Essentially, AT&T is taking the position that AT&T does not track the number of users of its own products.[6]



███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

AT&T has this information at its fingertips. It uses the information every day to charge its customers and to pay the third parties who provide software and services related to the accused offerings. AT&T simply refuses to produce this relevant information without a Court order.  BASCOM respectfully asks the Court to oblige.

---

[6] AT&T now says it is "actively investigating the seat license issue," (APP_404) but it has previously and repeatedly refused to provide such information to BASCOM, and has still not agreed. If AT&T does later agree to provide the requested information, BASCOM will withdraw its motion on this issue.

**D. The Court Should Compel AT&T to Provide Access to the Accused Offerings**

The accused offerings involve hosted online services provided to AT&T's business customers. In September 2016, BASCOM requested access to the accused offerings in its Request for Production No. 12, which requested: "An executable version of each Accused Offering in the same format and packaging as provided to Your customers, including all documentation and licensing information provided to Your customers and any licensing codes needed to install and operate the Accused Offering." (APP_014.).

Courts recognize that allowing access to the accused offerings is not only appropriate, but also is a desirable form of discovery into the accused products, especially if it does not impose an undue burden on the defendant. As one court has explained:

> [T]o the extent that defendants' servers embody the allegedly infringing processes or technology at issue, the court tentatively finds that an inspection is proper. Although inspections are potentially more burdensome than other forms of discovery, inspections may also be the most efficient and accurate method for determining whether the patented technology or processes have been infringed.

*Stamps.com, Inc. v. Endicia, Inc.*, No. CV 06-7499-ODW(CTX), 2008 WL 11339110, at *1 (C.D. Cal. June 24, 2008); *see also Cuno Inc. v. Pall Corp.*, 116 F.R.D. 279, 281 (E.D.N.Y. 1987) (noting that "inspections are not an extraordinary means of discovery in patent suits" and so are "permitted, and indeed anticipated").

Here, AT&T faces no substantial burden in fulfilling the request. The request does not call for physical inspection of servers at AT&T facilities or disrupting any AT&T operation. AT&T misconstrues BASCOM's request, arguing it "does not possess executable versions of the accused filtering software" because providing BASCOM such information would entail "transferring . . . software to a third party." (APP_404.) BASCOM is not requesting the transfer of proprietary software, but rather documents and information that would enable its technical expert to access, inspect, use, and test each accused offering to the same extent as any AT&T

11

customer would via the Internet. Accordingly, the Court should compel AT&T to fulfill the request.

## III. CONCLUSION

For the foregoing reasons, BASCOM respectfully asks the Court to compel AT&T to (1) produce relevant and responsive licenses; (2) produce unredacted versions of documents that AT&T either redacted or withheld completely for confidentiality; (3) produce e-mail responsive to BASCOM's final e-mail requests; (4) produce information depicting the number of seat licenses sold and volume of requests for the accused products; and (5) provide access to the accused offerings. Because discovery will soon close, BASCOM respectfully requests an Order compelling AT&T to provide the aforementioned information by January 1, 2018.

Dated: December 18, 2017

Respectfully submitted,

By: */s/ Arun Subramanian*
Arun S. Subramanian
   (admitted *pro hac vice*)
   New York State Bar No. 4611869
   asubramanian@susmangodfrey.com
Tamar E. Lusztig
   (admitted *pro hac vice*)
   New York State Bar No. 5125174
   tlusztig@susmangodfrey.com
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330

Daniel J. Shih
   (admitted *pro hac vice*)
   Washington State Bar No. 37999
   dshih@susmangodfrey.com
Jordan W. Connors
   (admitted *pro hac vice*)
   Washington State Bar No. 41649
   jconnors@susmangodfrey.com

        S<small>USMAN</small> G<small>ODFREY</small> LLP
        1201 Third Avenue, Suite 3800
        Seattle, Washington 98101
        Telephone: (206) 516-3880

        Terrell W. Oxford
           Texas State Bar No. 15390500
           toxford@susmangodfrey.com
        Jeffrey David
           (admitted *pro hac vice*)
           Texas State Bar No. 24053171
           jdavid@susmangodfrey.com
        S<small>USMAN</small> G<small>ODFREY</small> LLP
        1000 Louisiana Street, Suite 5100
        Houston, TX 77002
        Telephone: (713) 651-9366

        **ATTORNEYS FOR PLAINTIFF**
        **BASCOM GLOBAL INTERNET**
        **SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

                                              */s/ Tamar Lusztig*
                                              Tamar Lusztig