IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BASCOM GLOBAL INTERNET SERVICES, INC., <br><br> Plaintiff, <br> v. <br><br> AT&T CORP., <br><br> Defendant. | Civil Action No. 3:14-cv-03942-M <br><br> **JURY TRIAL DEMANDED** |

**BASCOM'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION TO COMPEL**

I.   INTRODUCTION

AT&T has not complied with its discovery obligations, withholding documents without sufficient legal or factual justification, and refusing to provide information it can obtain with a reasonable and limited investigation. In an attempt to foist its own burden onto BASCOM, AT&T argues repeatedly that BASCOM has not sufficiently demonstrated its entitlement to the requested information. But it is AT&T's duty to justify withholding relevant and responsive information. Because it has failed to meet that burden, BASCOM's motion should be granted.

II.   ARGUMENT

A.   **AT&T's Redactions and Withholding of Responsive and Relevant E-Mail Discovery Is Unreasonable and Contrary to Law**[1]

This Court's ESI order requires the production of electronic discovery, including e-mail and attachments. AT&T does not dispute that the redacted e-mails and thousands of withheld attachments are relevant and responsive, does not argue that its actions are permitted by this Court's ESI order, and makes no attempt to distinguish BASCOM's squarely-on-point case law. See *Pavillion Bank v. OneBeacon Am. Ins. Co.*, No. 3:12-CV-05211-G-BK, 2013 WL 12126258, at *3 (N.D. Tex. Nov. 13, 2013) ("Plaintiff was not entitled to unilaterally redact information it believed to be irrelevant or non-responsive. Further, any concerns regarding proprietary information and confidentiality are sufficiently addressed by the agreed protective order entered in this suit.") (citing cases). Indeed, AT&T cites <u>no authority</u> that sanctions such unilateral redactions, nor withholding relevant and responsive documents without even providing a descriptive log of withheld documents. That is because AT&T's actions are contrary to basic discovery norms, and the law.

---

[1] After AT&T filed its opposition, it finally agreed to produce the requested e-mail for Ms. Kisner. Accordingly, the only remaining e-mail discovery issue is AT&T's unjustified redactions and withholding of relevant and responsive e-mail attachments.

It is AT&T's burden to justify withholding discovery. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). AT&T unjustifiably tries to shift that burden to BASCOM, but its arguments must fail.

*First*, AT&T mischaracterizes and attempts to substantially broaden Magistrate Judge Stickney's July 31, 2017 order. That order did not permit AT&T to withhold all customer information, instead holding that customer names were not responsive to BASCOM's Interrogatory No. 6. On the basis of that limited order, AT&T now argues it may withhold any customer information it chooses, without even disclosing to BASCOM or this Court what information is being withheld. Indeed, the only description AT&T offers of the withheld "customer-specific e-mail attachments" is that they include "customer contracts." (Dkt. No. 248 at 12.) But a review of AT&T's e-mail production to date demonstrates that AT&T is withholding far more than "customer contracts." ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████) Moreover, AT&T's customer contracts are highly relevant. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

2

██████████████████████████████████████████████████████████████

██████████████████████████████████ AT&T can't have it both ways. It should be compelled to provide BASCOM the withheld e-mail attachments.

*Second*, AT&T contends that BASCOM is not entitled to the redacted and withheld e-mail information because has not established it needs the information. That is not the standard for discovery in federal court; it is AT&T's burden to establish it is entitled to withhold information. And given that AT&T has provided almost no information about what it is withholding, its position that BASCOM has no need for the information is difficult to evaluate. Even so, as explained above, the withheld documents appear to contain highly relevant information BASCOM has not been able to obtain otherwise.

AT&T states its actions are justified because of the sensitive nature of the withheld information, but fails to explain why this Court's Protective Order—which requires the production of highly confidential information and allows the parties to designate such information for review only by outside counsel—is inadequate to maintain the required confidentiality. AT&T also suggests there is some "expense of production" that justifies withholding information from BASCOM, but AT&T has already gathered, reviewed, and redacted the disputed documents and need only tell its vendor to produce them. Indeed, AT&T's unsanctioned approach of redacting each document and flagging each attachment to withhold (instead of simply producing the responsive e-mails and attachments branded "CONFIDENTIAL OUTSIDE COUNSEL ONLY") increases the work and cost for both parties, and has substantially delayed AT&T's e-mail production. In short, AT&T has utterly failed to meet its burden.

There is no basis in the Federal Rules of Civil Procedure, nor in the case law, to unilaterally redact and withhold <u>thousands</u> of relevant documents. BASCOM's motion should be granted.

### B. AT&T Can Easily Obtain the Requested Seat License Information

It is undisputed that the total number of seat licenses for the accused products sold by AT&T to its customers is highly relevant to BASCOM's damages analysis. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, AT&T argues it does not have, and does have to provide the information BASCOM requests.[3]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[3] AT&T's opposition conflates BASCOM's requests for the total number of seat licenses it sells to its customers with its customers' usage of the accused products. These are separate issues. As set forth here, AT&T can easily obtain the requested seat license information.

███████████████████████████████████████████████████
████

The mere fact that AT&T does not have the requested information maintained in an easily-printable database does not excuse its obligation to make reasonable efforts to provide it, at least using the sources described above. *See 3M Innovative Properties Co. v. Tomar Elecs.*, No. CIV 05-756 MJD/AJB, 2006 WL 2670038, at *6 (D. Minn. Sept. 18, 2006) ("[P]arties are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests."). Indeed, AT&T previously failed to investigate this issue, representing to BASCOM over months that it did not track <u>any</u> seat license data. Only <u>after</u> BASCOM filed the instant motion did AT&T finally produce a "portion" of the requested information, without providing any details about what is missing. ███████████████████
███████████████████████████████████████████

C. **AT&T Must Produce Comparable Licenses**

Although AT&T initially justified its refusal to provide responsive and relevant licenses with a proportionality argument, it seems to have abandoned that position, now claiming that the requested licenses are dissimilar from the '606 patent. Instead of producing the requested licenses, AT&T limited its production to licenses "entered into by AT&T as a licensee concerning patents that claim URL filtering." (Dkt. No. 243 at APP_34) and licenses "directed to Internet firewall technology" (Dkt. No. 248 at 2). That is narrower than the technology covered by the '606 patent—i.e., Internet (not just URL) content filtering—and is <u>far</u> narrower than technology <u>comparable</u> to Internet content filtering, which is what the law requires AT&T to produce. *See Sciele Pharma, Inc. v. Lupin, Ltd.*, No. CV 09-37 (RBK/JS), 2013 WL 12161442, at *2 (D. Del. Jan. 31, 2013) ("[T]o be discoverable, the licensing agreements at issue do not

5

have to be identical to the patent[ ] at issue, they merely have to be comparable. The term 'comparability' is interpreted broadly.").

As explained in BASCOM's opening brief, AT&T's production of licenses related only to "URL filtering" is overly narrow, and conflicts with this Court's claim construction order, which vetoed AT&T's proffered argument that the patent-in-suit is addressed solely to filtering URLs. AT&T's purported search for "firewall" licenses—which it revealed for the first time in its opposition to the instant motion, and which conflicts with its discovery responses—does not cure its attempt to relitigate this Court's claim construction order. BASCOM requested licenses related to all types of Internet content filtering, including without limitation, "firewall," "malware or content filtering," "web or content filtering," and "spam filtering." (*See* Dkt. No. 248 at 4.) AT&T's attempt to limit its production to patents related only to two narrow categories of Internet content filtering should be rejected.

Moreover, AT&T must also produce patent licenses relevant to technology that is comparable to Internet content filtering. *See Sciele Pharma, Inc.* 2013 WL 12161442, at *2. As previously set forth by BASCOM, network management technologies apart from Internet content filtering are infrastructurally and economically similar to the claimed technology, and therefore discoverable. AT&T's argument that these technologies are different goes "to the weight and admissibility of the evidence rather than whether the agreement[s are] discoverable." *Id.* at *3; *see also High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2012 WL 1533213, at *7 (D. Kan. Apr. 30, 2012) ("Both sets of patents involve the packetization of voice data and transmission over a network. This is an adequate showing of a comparable patent for purposes of discovery.").

6

AT&T's cases are inapposite. As quoted and cited above, the court in *Sciele Pharma, Inc.*, which <u>granted</u> in part the motion to compel the production of licenses, held that "comparability" is broad. 2013 WL 12161442, at *2-3 ("As noted, the scope of discovery, including determining whether a requested agreement is comparable, is interpreted broadly. . . . If [defendant] is correct in its belief that some of the requested agreements are completely irrelevant, they will be quickly ignored and will not divert the parties' attention and resources. [Plaintiff], however, must make this determination for itself."). The defendant in *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 11516244 (D. Kan. Nov. 14, 2014), sought production of plaintiff's "executed agreements with Cisco on *all subject matters*," with no attempt to argue comparability. *Id.* at *2 (emphasis in original). As explained above, BASCOM seeks production of licenses related to network management technology, which is comparable technology to the patent-in-suit. And the motion in *Multimedia Patent Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 12868261 (S.D. Cal. Oct. 23, 2012) was denied in part because "there are major economic differences between the Nokia license and the license that would have been reached at the hypothetical negotiation. The Nokia license is a worldwide cross-license involving as many as 40 Nokia patents resolving several lawsuits between Nokia and Apple, who are direct competitors." *Id.* at *2. AT&T has not articulated such specific factual circumstances to justify its blanket refusal to even search for responsive licenses.

BASCOM seeks reasonably comparable licenses, and its motion should be granted.

**D. BASCOM is Entitled to Access to the Accused Offerings**

BASCOM's request is simple, and seeks access to the accused offerings in the same manner as provided to AT&T's customers. Access to accused products is routinely granted in

patent cases. But instead of complying, AT&T obliquely argues that BASCOM's requests are not correctly phrased. BASCOM has already served additional discovery requests on AT&T that more unequivocally seek such access. Understanding that the Court might prefer to address this dispute after AT&T responds to those discovery requests, BASCOM withdraws this portion of the instant motion, without prejudice to renewing it if AT&T does not comply with BASCOM's new requests.

### III. CONCLUSION

For the forgoing reasons, BASCOM respectfully requests the Court grant its motion to compel.

Dated: January 22, 2018

Respectfully submitted,

By:    */s/ Arun Subramanian*
     Arun S. Subramanian
       (admitted *pro hac vice*)
       New York State Bar No. 4611869
       asubramanian@susmangodfrey.com
     Tamar E. Lusztig
       (admitted *pro hac vice*)
       New York State Bar No. 5125174
       tlusztig@susmangodfrey.com
     **SUSMAN GODFREY LLP**
     1301 Avenue of the Americas, 32nd Floor
     New York, New York 10019
     Telephone: (212) 336-8330

     Daniel J. Shih
       (admitted *pro hac vice*)
       Washington State Bar No. 37999
       dshih@susmangodfrey.com
     Jordan W. Connors
       (admitted *pro hac vice*)
       Washington State Bar No. 41649
       jconnors@susmangodfrey.com
     **SUSMAN GODFREY LLP**
     1201 Third Avenue, Suite 3800
     Seattle, Washington 98101

       Telephone: (206) 516-3880

       Terrell W. Oxford
          Texas State Bar No. 15390500
          toxford@susmangodfrey.com
       Jeffrey David
          (admitted *pro hac vice*)
          Texas State Bar No. 24053171
          jdavid@susmangodfrey.com
       **SUSMAN GODFREY LLP**
       1000 Louisiana Street, Suite 5100
       Houston, TX 77002
       Telephone: (713) 651-9366

       **ATTORNEYS FOR PLAINTIFF**
       **BASCOM GLOBAL INTERNET**
       **SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

          */s/ Tamar Lusztig*
          Tamar Lusztig